**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | |
|---|---|
| WASEEM DAKER, | |
| Plaintiff, | CIVIL ACTION NO.: 6:20-cv-90 |
| v. | |
| SHERRY BLAND, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

Defendants' Motion for Sanctions, or in the Alternative, Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment are now before the Court.  Docs. 203, 209.  Defendants responded to Plaintiff's Motion.  Doc. 222.  Plaintiff responded to Defendants' Motion.  Doc. 224.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment.  Because I conclude Defendants are entitled to summary judgment, I decline to rule on Defendants' request for dismissal as a sanction.  Furthermore, because I recommend Defendants' Motion for Summary Judgment be granted in its entirety, I **RECOMMEND** the Court **DENY as moot** Plaintiff's Motion for Summary Judgment and Plaintiff's Motion for Evidentiary Hearing.  Docs. 209, 214.  Finally, I **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment and **DENY** Plaintiff *in forma pauperis* status on appeal.

## PROCEDURAL HISTORY

Plaintiff's initial Complaint was docketed on September 15, 2020.  Doc. 1.  After screening the Complaint, the Court ordered service on the named Defendants.  Doc. 6.

Defendants are all individuals who work or worked in the Tattnall County Superior Court Clerk's Office.  After several requests to amend, some of which were granted, Plaintiff's operative Complaint is his Second Amended Complaint.  See Doc. 172 at 30–31.  Plaintiff asserts First Amendment access to the courts claims and claims under O.C.G.A. § 51-1-1 against Defendants for refusing to file his complaints and certain filings in his habeas cases.  Doc. 30 at 37–38.  Defendants also sent letters to officials at the prison where Plaintiff is housed, which resulted in prison officials freezing Plaintiff's inmate account for failure to pay litigation fees.  Plaintiff claims these actions violated O.C.G.A. § 51-10-1, his rights under the Fourteenth Amendment Due Process Clause, and his rights under the Fifth and Fourteenth Amendment Takings Clauses.  Id. at 38–40.

## UNDISPUTED MATERIAL FACTS

Defendants submitted a Statement of Material Facts ("Defendants' SMF") in support of their Motion for Summary Judgment, in accordance with the Federal Rule of Civil Procedure 56 and Local Rule 56.1.  Doc. 203-32.  Defendants' SMF is supported by:

1.  Defendants' responses to Plaintiff's first interrogatories, doc. 203-1;

2.  Defendants' responses to Plaintiff's third interrogatories, doc. 203-2;

3.  An email from Defendant Mulligan, doc. 203-3;

4.  A letter to Plaintiff with attached case list, doc. 203-4;

5.  Plaintiff's first, second, third, and fourth underlying Complaints, docs. 203-5, 203-6, 203-9, 203-10;

6.  An order dismissing Case Number 202-NH-1-CR, doc. 203-7;

7.  An order denying Plaintiff's application for discretionary appeal, doc. 203-8;

8.  A first, second, and third constitutional demand for speedy trial, docs. 203-11, 203-14, 203-18;

9.      A first, second, and third statutory demand for speedy trial, docs. 203-12, 203-15, 203-19;

10.     A first and second request for final disposition, docs. 203-13, 203-20;

11.     An order striking pro se motions, doc. 203-16;

12.     Motions to proceed pro se, doc. 203-17;

13.     Records indicating October 25, 2018 trial date, doc. 203-21;

14.     A calendar call, doc. 203-22;

15.     Motion and order to nolle prosequi, doc. 203-23;

16.     A motion for reconsideration, doc. 203-24;

17.     A notice of appeal from the order granting motion to quash, doc. 203-25;

18.     A notice of appeal from order of nolle prosequi, doc. 203-26;

19.     An order denying motion for reconsideration, doc. 203-27;

20.     An order dismissing Plaintiff's appeals A19A2121 and A19A2362, doc. 203-28;

21.     An order affirming orders of trial court, doc. 203-29;

22.     Letters requesting freezing of Plaintiff's inmate account, doc. 203-30; and

23.     An excerpt of Plaintiff's deposition, doc. 203-31.

Plaintiff has not responded to Defendants' SMF.  However, when considering the record at summary judgment, "all justifiable inferences are to be drawn" in favor of the non-movant. Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotations omitted) (quoting Tolan v. Cotton, 572 U.S. 651 (2014)).  Plaintiff did respond to Defendants' Motion for Sanctions, or in the Alternative, Motion for Summary Judgment, doc. 224, but Plaintiff only

responded to Defendants' request for sanctions for failure to produce the audio recordings.[1] Plaintiff did not provide any substantive response to Defendants' request for summary judgment.

Plaintiff also submitted a Statement of Material Facts ("Plaintiff's SMF").  Doc. 209. Plaintiff's SMF is essentially a copy of Plaintiff's sworn operative Complaint.  Compare Doc. 290 with Doc. 30.  Specific facts pleaded in a sworn complaint must be considered for the purposes of summary judgment.  Sconiers v. Lockhart, 946 F.3d 1256, 1262 (11th Cir. 2020); see also Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) ("We also credit the specific facts pled in [a plaintiff's] sworn complaint when considering his opposition to summary judgment.") (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014)).

With these considerations in mind, the Court identifies the following undisputed, material facts for the purposes of evaluating the parties' Cross-Motions for Summary Judgment:

Defendants Bland, Crews, Beecher, Hutcheson, Mulligan, and West all worked in the Tattnall County Superior Court Clerk's Office during some or all times relevant to Plaintiff's claims, namely between April 2014 to January 2021.  Doc. 203-32 at 1; see also Doc. 30.  In his Second Amended Complaint, Plaintiff asserts 41 different counts.  Doc. 30.  It is helpful to consider Plaintiff's claims (and the undisputed material facts) in terms of the three categories of claims Plaintiff uses: (1) claims based on return of Plaintiff's civil complaints (Counts 1–7);

---

[1]      Plaintiff's response to Defendants' Motion for Summary Judgment was due July 7, 2023. Plaintiff asked for additional time to respond, contending he did not initially receive a copy of Defendants' Motion.  Doc. 219.  I denied that request.  Plaintiff has now provided a Response dated August 6, 2023, doc. 224, and Plaintiff provided a declaration stating he received Defendants' Motion on August 3, 2023, doc. 225.  Although I denied Plaintiff's previous request for an extension to respond, I deem Plaintiff's Response timely and have fully considered it in addressing Defendants' Motion.

(2) claims based on failure to file motions in Plaintiff's criminal case (Counts 7–18); and

(3) claims based on requests to freeze Plaintiff's inmate account (Counts 19–14).

## I.      Claims Based on Return of Plaintiff's Civil Complaints

Plaintiff attempted to file four civil complaints ("underlying complaints") with the Tattnall County Superior Clerk's Office.  Doc. 30 at 12–25; Docs. 203-5, 203-6, 203-9, 203-10. These civil complaints asserted conversion claims against the Georgia Department of Corrections ("GDC") under the Georgia Tort Claims Act based on personal property purportedly taken from Plaintiff while Plaintiff was incarcerated.  Of those complaints, only one, the second, was ultimately filed on the docket.  See Doc. 30 at 18; Doc. 203-6 (Plaintiff's second underlying complaint); see also Doc. 203-7 (order dismissing second underlying complaint for Plaintiff's failure to comply with O.C.G.A. § 42-12-5 by not serving his affidavit *in forma pauperis* on the court and all named defendants); doc. 203-8 (order denying Plaintiff's application for discretionary appeal).  The other three complaints were not filed and were returned to Plaintiff with statements that the complaints could not be filed in Tattnall County due to improper jurisdiction and because the Tattnall County Sheriff's office could not serve the complaint on the GDC.  Doc. 30 at 12–25.  Plaintiff asserts Defendants Beecher, Hutcheson, and Bland were responsible for the handling of these civil complaints.

## II.     Claims Based on Failure to File Motions in Plaintiff's Criminal Case

Plaintiff was criminally prosecuted in Tattnall County based on allegations he kicked two prison guards.  Plaintiff alleges Defendant Bland failed to timely file several documents in the criminal case.  Doc. 30 at 25–31.  Plaintiff initially submitted several pro se motions in this criminal case, 2017-R-263-RR, which the trial court struck after concluding Plaintiff was represented by counsel during the proceedings.  Doc. 203-32 at 5.  Plaintiff then submitted

several motions to proceed pro se.  Doc. 203-17.  Before the trial court could rule on Plaintiff's

motions to proceed pro se and before Plaintiff's public defender had withdrawn, Plaintiff states

he submitted three motions in open court: (1) a third constitutional demand for a speedy trial;

(2) a third statutory demand for speedy trial; and (3) a second request for final disposition.

Doc. 203-32.  These three motions were not stamped as "filed" but are contained within the

clerk's record.  See Docs. 302-18, -19, -20.  The case was scheduled for trial one month after the

three motions were submitted in open court on October 25, 2018.  Doc. 302-21.  The trial was

later continued.  Doc. 203-22.

   On March 12, 2019, the court entered an order granting the prosecution's motion to nolle

prosequi the criminal case.  Doc. 203-23.  Plaintiff states he then submitted several appeals to the

clerk's office: (1) the first notice of appeal from the order of nolle prosequi on March 19, 2019

(Appeal A19A2121); (2) the first notice of appeal from the order granting the motion to quash on

March 28, 2019 (Appeal A19A2362); and (3) the first motion for reconsideration on April 8,

2019.  Doc. 30 at 26–27.  Defendant Bland eventually received Plaintiff's filings and filed those

into the record on April 11, 2019.  Docs. 203-24, -25, -26.  The trial court denied Plaintiff's

motion for reconsideration.  Doc. 203-27.  Plaintiff's two appeals were dismissed because they

were filed pro se while Plaintiff was still represented by counsel.  Doc. 203-28.  On February 3,

2020, Plaintiff filed a motion to proceed pro se and a motion for an out-of-time appeal, which the

trial court granted on July 2, 2020.  Doc. 30 at 30.  Plaintiff timely filed notices of appeal on the

orders of nolle prosequi (Appeal A21A0047), and quashing subpoena (Appeal A21A0113).  Id.

at 31.  The Georgia Court of Appeals ultimately affirmed the trial court in both appeals.

Doc. 203-29.  In total, Plaintiff alleges six motions were not filed: one constitutional demand for

a speedy trial; one statutory demand for a speedy trial; one request for final disposition; one

notice of appeal from order of nolle prosequi; one notice of appeal from an order granting motion to quash; and one motion for reconsideration.[2]  Doc. 30 at 25–30.

## III.    Claims Based on Requests to Freeze Plaintiff's Inmate Account

Defendants Bland, Crews, Mulligan, and West sent 23 letters between April 18, 2014 and January 14, 2021, to the facilities where Plaintiff was housed.  Doc. 203-30.  Those letters asked the prison to freeze Plaintiff's inmate account based on Plaintiff's failure to pay court fees and costs generated by Plaintiff's various civil filings.  Id.  Plaintiff's inmate account was frozen during this time, but no money was collected or provided to the clerk's office.  Doc. 203-31.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the non-moving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

---

[2]      Plaintiff mentions several other notices of appeal in his Second Amended Complaint.  See Doc. 30 at 27–30.  However, Plaintiff's claims are based on Defendant Bland failing to file his first notice of appeal from order of nolle prosequi and his second notice of appeal from order granting motion to quash.  Id. at 26.

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record that establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-moving party's case or the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the non-moving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

The parties filed two competing Motions for Summary Judgment.  "Cross-motions for summary judgment do not preclude the Court from finding material facts in dispute."  Hill v. Johnson Controls World Servs., Inc., No. CIV. A. CV294-028, 1994 WL 562583 (S.D. Ga. July 29, 1994), aff'd sub nom. Hill v. Johnson Controls World, 51 F.3d 1051 (11th Cir. 1995).  "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  § 2720 Procedure on a Motion for Summary Judgment—Cross-motions, 10A Fed. Prac. & Proc. Civ. § 2720 (4th ed.).  The Court will address each Motion in turn, beginning with Defendants' Motion.

However, before considering the substance of the Motions, it is necessary to address a discovery dispute that has dominated this litigation in recent months. Plaintiff maintains he obtained audio recordings related to this case that are stored on portable flash drives, but those drives are being held by prison officials where Plaintiff is housed, and the officials refuse to give Plaintiff access to the materials. Plaintiff represents the audio recordings are responsive to Defendants' discovery requests and are "damaging to [Defendants'] case." Doc. 203 at 2. Plaintiff has asked the Court to order prison officials to provide the flash drives to Plaintiff several times in this litigation. The Court has denied Plaintiff's requests to compel the non-party prison officials to make the flash drives available to Plaintiff, but the Court has attempted to facilitate Defendants' efforts to obtain the recordings in discovery. Doc. 78 at 10 n.7; Docs. 124, 183. Even so, the parties' attempts to obtain the flash drives have been unsuccessful.

In their instant Motion for Sanctions, or in the Alternative, Motion for Summary Judgment, Defendants argue Plaintiff has not complied with his discovery obligations or this Court's Orders because Plaintiff has failed to produce the audio recordings and ask the Court to dismiss Plaintiff's claims as a sanction. Plaintiff argues he would produce the audio recordings if he could, but he cannot, and he should not be sanctioned because the audio recordings are not within his possession, custody, or control. As explained below, I conclude Defendants are entitled to summary judgment on all of Plaintiff's claims because those claims fail as a matter of law, and, therefore, it is not necessary to address Defendants' request for sanctions for Plaintiff's failure to provide the audio recordings in discovery.[3]

---

[3]    Plaintiff also filed a "Motion for Evidentiary Hearing to Produce Evidence Motion for Subpoenas" in which he asks the Court to schedule a hearing and issue a subpoena to prison officials to produce the audio recordings in open court at the hearing. Doc. 214. Plaintiff does not request a hearing for any purpose other than to obtain the audio recordings. Because I conclude Defendants are entitled to

It is also important to note Plaintiff has not sufficiently explained the significance of these audio recordings.  Plaintiff says the recordings are "damaging to [Defendants'] case," but he does not say how or why the recordings matter to this litigation.  Plaintiff has not described the content of the recordings or attempted explain how these recordings would benefit him or undermine Defendants' positions.  Plaintiff's own Motion for Summary Judgment makes no mention of the audio recordings.  Docs. 209, 210, 211.  Additionally, Plaintiff's Response to Defendants' Motion for Summary Judgment does not rely on the content of the audio recordings as a basis for opposing summary judgment.  Doc. 224.  Even after extensive briefing about the audio recordings, the Court is still unclear on what—if any—significance the purported audio recordings have in this matter.[4]  Even if the audio recordings fully supported Plaintiff's allegations in this case, the recordings would not change the analysis or conclusions in this Report and Recommendation.  Plaintiff has failed to identify any evidence in the record to support several essential elements of his claims, and nothing suggests the audio recordings would or could establish these essential elements.  In short, Plaintiff has not shown his inability to obtain the audio recordings has prejudiced him in any way.

Turning to Defendants' Motion for Summary Judgment, Defendants have divided their arguments for summary judgment into three sections based on the three categories of claims Plaintiff has asserted.  Doc. 203 at 12.  The Court will address each category of claims in turn.

---

summary judgment on all of Plaintiff's claims because the claims fail as a matter of law, I also **DENY as moot** Plaintiff's "Motion for Evidentiary Hearing to Produce Evidence Motion for Subpoenas."

[4]      The number of submissions related to or discussing the audio recordings is extraordinary.  See, e.g., Docs. 72, 83, 89, 90, 110, 112, 114, 115, 131, 133, 138, 142, 143, 144, 147, 148, 154, 157, 158, 174, 175, 191, 192, 195, 200, 208, 213, 224.

## I.        Claims Based on Return of Plaintiff's Civil Complaints

Plaintiff asserts Defendants' refusal to file his civil complaints violated his First

Amendment right of access to the courts and violated O.C.G.A. § 51-1-1.  Doc. 30 at 37.

Defendants offer several reasons summary judgment should be granted: (1) Plaintiff cannot

establish Defendants violated his First Amendment access to the courts; (2) Defendants are

entitled to qualified immunity on Plaintiff's claims they violated his First Amendment right of

access to the courts; and (3) Plaintiff's claims alleging a violation of O.C.G.A. § 51-1-1 fail as a

matter of law.  Doc. 203 at 13.

### A.        Plaintiff Cannot Establish a Violation of His First Amendment Rights

Plaintiff's First Amendment claims related to Defendants' alleged failure to file

Plaintiff's civil complaints fails because Plaintiff has not pointed to any evidence in the record

that he suffered an actual injury from Defendants' conduct.  "For an inmate to state a claim that

he was denied access to the courts, he must establish that he suffered actual injury by showing

that the defendant's actions hindered his ability to pursue a nonfrivolous claim."  Jackson v.

Jackson, Civil Action No. CV612-119, 2013 WL 3967402, at *3 (S.D. Ga. Aug. 1, 2013) (citing

Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002)).  "An inmate must prove that the

defendants' actions hindered or frustrated his efforts to pursue a non-frivolous direct criminal

appeal, habeas petition, or civil rights action.  Examples of actual injury include missing filing

deadlines or being prevented from presenting claims."  Denney v. Nelson, 304 F. App'x 860, 863

(11th Cir. 2009) (citing Lewis v. Casey, 518 U.S. 343, 354 (1996), and Wilson v. Blankenship,

163 F.3d 1284, 1290 n.10 (11th Cir. 1998)).

Plaintiff's one civil complaint that was ultimately filed on the Tattnall County docket was

dismissed due to a failure of service, not due to delay in filing the complaint.  See Doc. 203-6

(Plaintiff's second underlying complaint); see also Doc. 203-7 (order dismissing second

underlying complaint for failure to comply with O.C.G.A. § 42-12-5 by not serving affidavit *in forma pauperis* on the court and all named defendants); doc. 203-8 (order denying Plaintiff's application for discretionary appeal).  Thus, Plaintiff plainly suffered no actual injury related to the handling of the one civil complaint that was filed but dismissed.

Plaintiff also fails to demonstrate any actual injury resulting from the return of his three other civil complaints that were deemed to be improperly filed in Tattnall County.  Notably, the filings were rejected because the named defendant in those suits—namely, the Georgia Department of Corrections—did not reside in and could not be served in Tattnall County.  The Tattnall County clerk's office directed Plaintiff to file the suits in the appropriate jurisdiction.[5] At most, Plaintiff alleges he experienced some delay in filing these suits because he was required to file the complaints in another jurisdiction.  Any such delay does not demonstrate prejudice or constitute an actual injury.  Courts consistently reject claims of delay without prejudice as constituting actual injuries in access-to-courts claims.  See Creighton v. Smith, No. 6:18-CV-42, 2019 WL 4145608, at *9 (S.D. Ga. Aug. 7, 2019) (concluding prison's delay in transmitting inmate mail, resulting in a missed filing deadline, did not constitute actual injury where the plaintiff suffered no prejudice from the delay), *report and recommendation adopted*, 2019 WL 4166785 (S.D. Ga. Aug. 30, 2019); King v. Superior Ct. Judge, No. 7:06-CV-80, 2007 WL 2583360, at *4 (M.D. Ga. Sept. 4, 2007) (concluding the plaintiff failed to satisfy the actual injury requirement because "the plaintiff has pointed to no injury resulting from the alleged delay in the transmittal of his appeal to the Georgia Court of Appeals other than the delay itself"); see also Daker v. Warren, 660 F. App'x 737, 741 (11th Cir. 2016) (concluding plaintiff did not

---

[5]      There is no indication in the record Plaintiff ever attempted to file the suits in the other jurisdictions, as he was directed to by the Tattnall County clerk's office.

satisfy the actual injury requirement, despite alleging inadequate law library access caused him

to miss deadlines, because he failed to explain "how he had colorable claims for relief that he

could have asserted but for the alleged lack of access to the courts").  Plaintiff was not denied the

ability to present his claims, he was merely directed to file his claims in a different Georgia

county.  Again, this may demonstrate a short delay, but it does not constitute an actual injury.

Additionally, Plaintiff's claims for conversion asserted under the Georgia Tort Claims Act are

not the type of "frustrated legal claim" that constitutes a deprivation of access to the courts in

violation of the First Amendment.  See Lewis, 518 U.S. at 354 (1996) (concluding "the injury

requirement is not satisfied by just any type of frustrated legal claim" and noting actual injuries

typically arise from direct appeals from criminal convictions, habeas petitions, and some civil

rights actions).

  Because Plaintiff has not pointed to any actual injury suffered arising from the rejection

of his civil complaints, and because Plaintiff's conversion claims are not the type of "frustrated

legal claim" that could constitute a deprivation of access to the courts, Plaintiff has not

established there was a violation of his First Amendment rights.  Therefore, Defendants' Motion

for Summary Judgment is due to be granted as to Plaintiff's First Amendment claims arising

from rejection of his civil complaints.

  **B.**  **Plaintiff Cannot Establish a Violation of O.C.G.A. § 51-1-1**

  Plaintiff also asserts claims based on the rejection of his civil complaints under O.C.G.A.

§ 51-1-1.  Defendants argue there is no evidence to support a violation of O.C.G.A. § 51-1-1.

Section 51-1-1 states, "[A] tort may also be the violation of a public duty if, as a result of the

violation, some special damage accrues to the individual."  Section 51-1-1 merely provides the

definition of a tort under Georgia law and confirms a tort may arise from a violation of a public

duty, in some circumstances.  This language does not on its own establish any substantive right

or cause of action.  See Landis v. Rockdale County, 427 S.E.2d 286, 289 (Ga. Ct. App. 1992) ("Appellant contends that the duty emanates from O.C.G.A. §§ 51-1-1 and 51-1-6, but they merely define a tort and authorize damages when a legal duty is breached.  Neither creates a legal duty substantively."); see also New Star Realty, Inc. v. Jungang PRI USA, LLC, 816 S.E.2d 501, 512 n.7 (Ga. Ct. App. 2018).  Additionally, Plaintiff has not linked this statute with any cognizable tort in his Second Amended Complaint.

In sum, Defendants have demonstrated they are entitled to summary judgment, based on the undisputed material facts, on Plaintiff's First Amendment clams and claims O.C.G.A. § 51-1-1 arising from the rejection of Plaintiff's civil complaints.  Therefore, I **RECOMMEND** the Court **GRANT** summary judgment to Defendants on these claims.  Because I recommend summary judgment be granted on the above grounds, I decline to address Defendants' qualified immunity argument.

## II.    Claims Based Failure to File Motions in Plaintiff's Criminal Case

Plaintiff asserts Defendants failed to file certain motions in his criminal case, and this conduct violated Plaintiff's First Amendment right of access to the courts and violates O.C.G.A. § 51-1-1.  Doc. 30 at 38.  Defendants offer several reasons summary judgment should be granted as to this second set of claims: (1) Plaintiff cannot establish Defendants violated his First Amendment right of access to the courts; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff's claims alleging a violation of O.C.G.A. § 51-1-1 fail as a matter of law.  Doc. 203 at 20.

### A.    Plaintiff Cannot Establish a Violation of His First Amendment Rights

Plaintiff cannot establish Defendants violated his First Amendment rights by failing to file his motions in his criminal case for the same reasons he cannot establish Defendants violated

his First Amendment rights by failing to file his civil complaints: Plaintiff has not pointed to any evidence that any delay in the filing of the motions caused him any actual injury.

Plaintiff complains Defendants failed to file several pro se motions and appeals in the criminal case, 2017-R-263-RR.  However, the record demonstrates those documents were filed but were ultimately struck after the trial court determined Plaintiff was still represented by counsel when he filed those pro se motions.  Doc. 203-28, -29; see also Doc. 203-32 at 5.  Later, Plaintiff was allowed to proceed pro se and was then permitted to file motions in the case.  There was likely some delay between the time Plaintiff initially filed his unauthorized pro se motions and the time he was allowed proceed pro se and file motions himself, but Plaintiff has not identified any prejudice or injury he experienced arising from that delay.  Indeed, after Plaintiff was allowed to proceed pro se, he appealed the trial court rulings, but the Georgia Court of Appeals affirmed the trial court's decisions.  It is also important to note Plaintiff was not convicted in the criminal case; the state filed a motion to nolle prosequi, and the trial court granted that motion.  Plaintiff has failed to identify any prejudice or injury he suffered from a slight delay in his ability to file pro se motions in a criminal case, particularly where he was never convicted in that case.  Therefore, Defendants are entitled to summary judgment on Plaintiff's First Amendment claims arising from Defendants' alleged failure to file motions in Plaintiff's criminal case.

### B.    Plaintiff Cannot Establish a Violation of O.C.G.A. § 51-1-1

Plaintiff claims Defendants violated O.C.G.A. § 51-1-1 by failing to file motions in Plaintiff's criminal case fail for the same reasons explained in § I.A.2: Section § 51-1-1 does not create a substantive right or cause of action.  Plaintiff has pointed to no law supporting this claim.

In sum, Defendants have demonstrated they are entitled to summary judgment, based on the undisputed material facts, on Plaintiff's claims arising from Defendants' failure to file motions in Plaintiff's criminal case.  Therefore, I **RECOMMEND** the Court **GRANT** summary judgment on these claims.  Because I recommend summary judgment be granted on the above grounds, I decline to address Defendants' qualified immunity argument.

### III.    Claims Based on Requests to Freeze Plaintiff's Inmate Account

Plaintiff asserts Defendants sent letters asking prison officials to freeze his inmate account and that conduct violated O.C.G.A. § 51-10-1, his rights under the Fifth and Fourteenth Amendment Takings Clause, and his rights under the Fourteenth Amendment Due Process Clause.  Doc. 30 at 39–41.  Defendants offer several reasons summary judgment should be granted as to this third set of claims: (1) several of Plaintiff's claims are barred by the statute of limitations; (2) Plaintiff cannot establish his claim for conversion under O.C.G.A. § 51-10-1; (3) Plaintiff cannot establish Defendants violated his rights under the Fifth and Fourteenth Amendment Takings Clause; (4) Plaintiff cannot establish Defendants violated his rights under the Fourteenth Amendment Due Process Clause; and (5) Defendants are entitled to qualified immunity on Plaintiff's claims under the Takings Clause and the Due Process Clause.  Doc. 203 at 24.

### A.    Plaintiff Cannot Establish a Claim for Conversion Under O.C.G.A. § 51-10-1

As Defendants correctly point out, Plaintiff has not pointed to evidence that would support his claim for conversion under O.C.G.A. § 51-10-1 based on the letters asking prison officials to freeze Plaintiff's inmate account.  To establish a claim for conversion under O.C.G.A. § 51-10-1, a plaintiff must normally prove four elements: "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property."  Pierce v. Clayton County,

717 F. App'x 866, 872 (11th Cir. 2017) (citing City of Atlanta v. Hotels.com, L.P., 775 S.E.2d 276, 279 (Ga. Ct. App. 2015)).

Defendants argue the record lacks any evidence they have or ever had actual possession of Plaintiff's inmate account or the funds in the account.  Thus, Plaintiff has the burden to point to evidence in the record supporting actual possession (at least as to create a genuine issue of material fact).  Plaintiff has not carried his burden.  Plaintiff fails to show any evidence even suggesting Defendants have or ever had actual possession of his inmate account or the funds in the account.  The record shows, at most, non-party prison officials froze Plaintiff's inmate account in response to Defendants' letters, and the record is clear no money was ever collected or transmitted to the Tattnall County clerk's office.  Doc. 203-31.  Based on these undisputed facts, Plaintiff has failed to point to any evidence in the record to support an essential element of his claim.  See Smith v. United States, 873 F.3d 1348, 1353–54 (11th Cir. 2017) (affirming dismissal of conversion claim under O.C.G.A. § 51-10-1 because the plaintiff failed to allege the named defendant ever had actual possession of the property at issue).

To be sure, it is possible under Georgia law to assert a conversion claim arising from the unlawful freezing of an inmate's prison account, as the Georgia Court of Appeals recognized in Grant v. Newsome, 411 S.E.2d 796, 798 (Ga. Ct. App. 1991).  However, the Grant court recognized money belonging to an inmate in the inmate's prison account is "in the possession of the warden."  Id.; see Givens v. Ala. Dep't of Corr., 381 F.3d 1064, 1069 (11th Cir. 2004) (noting inmates have "at most a limited property right" in the principal funds in an inmate account and prisoners lack full rights of possession, control, and disposition of funds in an inmate account).  But Plaintiff has not sued any warden of any detention facility in this case.

The record demonstrates prison officials—not Defendants—froze Plaintiff's account and no funds were ever sent to the Tattnall County clerk's office.

In sum, Plaintiff has not pointed to any evidence in the record to show Defendants had actual possession of the property, which means Plaintiff cannot establish a claim under O.C.G.A. § 51-10-1.  Therefore, Defendants are entitled to summary judgment on Plaintiff's O.C.G.A. § 51-10-1 claims.

> **B.      Plaintiff Has Not Established a Violation of the Fifth and Fourteenth Amendment Takings Clauses**

Plaintiff also claims Defendants' requests for prison officials to freeze Plaintiff's inmate account violates the Fifth and Fourteenth Amendment's Takings Clauses.  The Fifth Amendment to the United States Constitution provides, "[P]rivate property [shall not] be taken for public use without just compensation."  U.S. Const. Amend. V.  The prohibition is made applicable to the states through the Fourteenth Amendment Due Process Clause, and the prohibition applies in the same way.  See Rymer v. Douglas County, 764 F.2d 796, 800 (11th Cir. 1985) (citing Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155 (1980)).  To state a claim for violation of the Takings Clause, Plaintiff must show (1) he possesses a property interest that is constitutionally protected, and (2) the deprivation or reduction of that interest constitutes a taking.  See Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trs., 775 F. App'x 496, 499 (11th Cir. 2019) (citing Givens v. Ala. Dep't. of Corr., 381 F.3d 1064, 1066 (11th Cir. 2004)).  Assuming, without deciding, Plaintiff possessed a constitutionally protected property interest in his inmate account, Plaintiff cannot show a deprivation of that interest that constituted a taking.

Prison officials froze Plaintiff's inmate account so money could be deducted to pay for Plaintiff's filing fees and costs.  Plaintiff does not show he was not obligated to pay fees

associated with his habeas case, only that his account should not have been frozen. Plaintiff plainly received value for the freezing of his account, as this allowed his various habeas petitions to be filed and adjudicated. Because Plaintiff does not demonstrate the fees themselves were unlawful or unreasonable in any way, he cannot challenge the freezing of his account for payment of those fees as an unconstitutional taking.[6] See Edmonson v. Fremgen, 590 F. App'x 613, 615 (7th Cir. 2014) (holding freezing an inmate's account for the purpose of collecting reasonable court fees did not convert an otherwise reasonable fee into an unconstitutional taking); see also United States v. Sperry Corp., 493 U.S. 52, 63 (1989) ("[A] reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services. A governmental body has an obvious interest in making those who specifically benefit from its services pay the cost.") (quoting Massachusetts v. United States, 435 U.S. 444, 462 (1978)). Because Plaintiff's inmate account was only frozen to pay for reasonable fees, the Court should grant summary judgment to Defendants on Plaintiff's Taking Clause claims.

### C.   Plaintiff Has Not Established a Violation Under the Fourteenth Amendment Due Process Clause

Defendants argue Plaintiff cannot establish Defendants violated his rights under the Fourteenth Amendment based on their letters asking prison officials to freeze Plaintiff's inmate account. To determine if a procedural due process violation has occurred, courts must determine whether a prisoner was deprived of a protected interest through state action, and, if so, whether constitutionally adequate process was afforded.[7] See Watkins v. Israel, 661 F. App'x 608, 609

---

[6]     Plaintiff makes a lengthy argument that the statutory filing fees he was obligated to pay were unconstitutional in numerous ways. Doc. 211 at 16–24. I have reviewed this argument and the cited authority, and none of cases or provisions cited support Plaintiff's argument. There is no reasonable argument the statutory fees were unconstitutional.

[7]     Plaintiff does not state whether he is alleging violations of his substantive or procedural due process rights. See Doc. 30 at 39, 42. However, in his operative Complaint, Plaintiff cites to Wright v.

(11th Cir. 2016) (quoting <u>Grayden v. Rhodes</u>, 345 F.3d 1225, 1232 (11th Cir. 2003)).

Defendants acknowledge Plaintiff has a property interest, albeit a limited one, in his inmate

banking account and he sufficiently shows state action caused the freezing of the inmate account.

<u>See</u> Doc. 203 at 30.  However, Defendants argue Plaintiff has no evidence the process provided

was constitutionally inadequate.  <u>Id.</u>

      As noted above, relevant authority suggests the appropriate claim and party for an inmate

challenging an improper freezing of an inmate account is a conversion claim against the warden

of the institution, not the clerk who requests freezing.  <u>See, e.g.</u>, <u>Grant</u>, 411 S.E.2d at 798 (noting

prisoner could bring a claim of conversion under O.C.G.A. § 51-10-1 against the warden of the

prison where inmate account was frozen).  However, even assuming for the sake of argument

Plaintiff could allege a procedural due process claim against Defendants, Plaintiff is unable to

show he suffered constitutionally inadequate process.  Due process does not necessarily require

an opportunity to be heard before the deprivation.  <u>Watkins</u>, 661 F. App'x at 610.  Depending on

the circumstances, a post-deprivation remedy may be adequate if it is capable of fully

compensating the deprived individual.  <u>Id.</u>  In determining what procedural protections are

required, a court must consider three factors: (1) "the private interest that will be affected by the

official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards;" and

(3) "the Government's interest, including the function involved and the fiscal and administrative

burdens that the additional or substitute procedural requirement would entail."  <u>Mathews v.

Eldridge</u>, 424 U.S. 319, 335 (1976).

---

<u>Newsome</u>, 795 F.2d 964, 967 (11th Cir. 1986), which deals specifically with procedural due process, and
<u>Neary v. Dugger</u>, 766 F.2d 456 (11th Cir. 1985), which has more relevance to the Takings Clause.  Thus,
the Court construes that Plaintiff wishes to assert a procedural due process claim.

For the first factor, Plaintiff only has a limited interest in the money in his inmate account, indicating less rigorous procedural protections are required.  See Givens, 381 F.3d at 1069.  For the second factor, there is very little risk of an erroneous deprivation of funds where Plaintiff's own action (i.e., initiating a habeas corpus action) triggers the account-freeze process.  Section 42-12-7.1 (3)(A) states a clerk of court only alerts the superintendent of a prison to freeze an inmate account after receiving an indigent prisoner's habeas petition.  The freezing is automatically terminated once all costs and fees have been satisfied.  O.C.G.A. § 42-12-7.1(3)(B).  For the third factor, the state has a strong interest in disincentivizing frivolous habeas petitions and ensuring filing fees are paid.  All three Mathews factors weigh in favor of the state and against extensive procedural protections, such as a pre-deprivation hearing.  Watkins, 661 F. App'x 610 (considering a claim prison officials took funds from inmate-plaintiff's prison account for uniform and subsistence fees and concluding a post-deprivation remedy satisfied due process requirements).  Moreover, a pre-deprivation hearing under O.C.G.A. § 42-12-7.1 would not be feasible or helpful.  Georgia clerks of court and prison wardens would need to provide every indigent inmate filing a habeas petition with an opportunity to be heard before freezing inmate accounts for the purposes of paying any costs associated with the habeas case.  Such procedures would be unnecessary and impractical, particularly given the account-freeze process is only triggered by the inmate's filing of a petition.

When pre-deprivation hearings are not feasible, procedural due process only requires a post-deprivation means of redress.  See Lopez v. United States, 656 F. App'x 957, 965 (11th Cir. 2016) (quoting McKinney v. Pate, 20 F.3d 1550, 1563 (11th Cir. 1994)).  "A plaintiff must plead, and prove, that available state remedies are inadequate in order to state a procedural due process claim."  Gardner v. Rogers State Prison, Civil Action No. CV608-016, 2009 WL 29572,

at *3 (S.D. Ga. Jan. 5, 2009) (citing Merritt v. Brantley, 936 F. Supp. 988 (S.D. Ga. 1996)). Plaintiff points to no evidence to suggest available state remedies are inadequate.  Further, it is clear O.C.G.A. § 51-10-1 provides an adequate post-deprivation remedy for an inmate when a warden freezes that inmate's account.  See Grant, 411 S.E.2d at 798 (noting prisoner could bring a claim of conversion under O.C.G.A. § 51-10-1 against the warden of the prison where inmate account was frozen); see also Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987) (finding Georgia has provided an adequate post-deprivation remedy where a plaintiff claims the state has retained his property without due process of law through O.C.G.A. § 51-10-1); Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991) (finding no procedural due process violation where O.C.G.A. § 51-10-1 provided an adequate post-deprivation remedy where personal property was retained).  Ultimately, Plaintiff fails to show he was entitled to any additional procedural protections than the ones he was provided.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's procedural due process claim.

Plaintiff cannot establish Defendants violated O.C.G.A. §51-10-1, his Takings Clause rights, or his due process rights.  Therefore, I **RECOMMEND** the Court **GRANT** summary judgment as to all of Plaintiff's claims arising from Defendants' letters asking prison officials to freeze Plaintiff's inmate account.  Because I recommend summary judgment be granted on the above grounds, I decline to address Defendants' qualified immunity argument and their statute of limitations argument.  Furthermore, because summary judgment should be granted in favor of Defendants as to all of Plaintiff's claims, I **RECOMMEND** the Court **DENY as moot** Plaintiff's Motions for Summary Judgment and for Evidentiary Hearing.

**IV.    Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff

has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's

order of dismissal.  See Fed. R. App. P. 24(a)(3) (noting trial court may certify an appeal of party

proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is

filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not

taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context

must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691

(M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous

claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or

argument is frivolous when it appears the factual allegations are clearly baseless or the legal

theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not

brought in good faith if it is "without arguable merit either in law or fact."  Moore v. Bargstedt,

203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.

2001)); see also Brown v. United States, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872,

at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of the parties' Motions for Summary Judgment, there are no

non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus,

the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

For these reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment.  Because I conclude Defendants are entitled to summary judgment, I decline to rule on Defendants' request for dismissal as a sanction.  Furthermore, because I recommend Defendants' Motion for Summary Judgment be granted in its entirety, I **RECOMMEND** the Court **DENY as moot** Plaintiff's Motion for Summary Judgment and Plaintiff's Motion for Evidentiary Hearing.  Docs. 209, 214.  Finally, I **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 1st day of September, 2023.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA